**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BILFINGER WATER TECHNOLOGIES, INC., § § § Plaintiff, § § VS. § HENDRICK MANUFACTURING CO., § § Defendant. § | CIVIL ACTION NO. H-14-1164 |

**MEMORANDUM AND OPINION**

This patent-infringement case involves technology for pumping water from rivers, lakes, and reservoirs. Bilfinger Water Technologies, Inc. sued Hendrick Manufacturing Co., d/b/a Hendrick Screen Co., alleging that a water-intake screen Hendrick designed and installed for a water-pump project in Virginia infringed Bilfinger's patent for a screen-intake apparatus, U.S. Patent No. 8,297,448 (the '448 Patent). Hendrick has counterclaimed, alleging tortious interference and unfair and deceptive trade practices and seeking a declaratory judgment of noninfringement, invalidity, and unenforceability. (Docket Entry No. 36).

This memorandum and opinion addresses Hendrick's motion for partial summary judgment of noninfringement. (Docket Entry Nos. 24, 25). Hendrick argued that the undisputed facts in the summary judgment record show that its device does not infringe the Bilfinger '448 Patent as a matter of law because the Hendrick device lacks: (1) a solid base; (2) a central body; (3) a second half-cylinder screen; and (4) a second flow modifier. (Docket Entry No. 25). Bilfinger responded, and Hendrick replied. (Docket Entry Nos. 27, 29). The court held a hearing at which counsel presented argument. (Docket Entry No. 39). At the hearing, counsel agreed that no claim

1

construction or additional discovery was required to decide whether the Hendrick device had a second flow modifier, as claimed in the '448 Patent. After the hearing, each party submitted a surreply brief focusing on that issue and addressing literal infringement and infringement under the doctrine of equivalents. (Docket Entry Nos. 40, 43).

This memorandum and opinion addresses Hendrick's argument that its device does not infringe because it lacks a second flow modifier, as claimed in the '448 Patent. Based on the pleadings; the record; the motion, response, reply, and surreplies; the arguments of counsel; and the applicable law, the court grants the motion for partial summary judgment. The reasons for this ruling are explained below. The *Markman* hearing scheduled for **June 2, 2015**, at 9:00 a.m. in Courtroom 11-B is converted to a status and scheduling conference.

**I.     Background**

Bilfinger and Hendrick both make water-intake screens that attach to water pumps used in public-works projects. (Docket Entry No. 26, McDole Declaration at ¶ 5). The pumps remove water from rivers and lakes. The water is processed and delivered to communities. To comply with the Clean Air Act, these water pumps include screens that prevent marine life from being sucked in. The screens have a base, an outlet, and a metal screen. They frequently include a flow modifier, which changes the water's flow so that it hits the screen at a uniform volume spread across the screen, instead of concentrating at the part of the screen closest to the outlet. That concentration causes debris to accumulate and creates a suction that can be hazardous to aquatic life. *See* U.S. Patent No. 6,051,131, Col. 1, ll. 12–17.

Bilfinger's '448 Patent describes an a "Screen Intake Device for Shallow Water." The '448 Patent claims a design for two half-cylindrical water intake screens that are connected to a body with

an outlet pipe. (Docket Entry No. 26, McDole Declaration at ¶ 6). The screens and the body are fixed to a solid cement base. (*Id.*). Water flows in through the screens and out through an outlet attached horizontally to the body. (*Id.*). There are two flow modifiers, one under each of the two screens. (*Id.* at ¶ 8).

In 2013, Loudoun County, Virginia solicited bids for a water-intake system to be installed on the Potomac River. The project specifications called for the system described in the '448 Patent, or something "equal" to it. (Docket Entry No. 1, Ex. B, Project Specifications, at p. 12). Bilfinger contends that any system that satisfies the specifications of the Loudoun County bid request necessarily infringes the '448 Patent.

Hendrick submitted a bid and received the Loudoun County screen project. In the Hendrick design, water flows through one long screen. A splice plate is attached to the screen at its midpoint. The base has a hole in the center, and the outlet valve runs through that hole. (*Id.*). A flow-modifier component, made of two pieces of half-cylindrical metal welded together, is located under the screen. The flow-modifier component has 48 holes that are smaller toward the center (above the outlet) and larger toward the edges. (Docket Entry No. 30, Ex. A, Whitaker Depo. at pp. 45–50). The flow-modifier component changes the water flow, dispersing it so that it reaches the screen surface at an even pressure. (*Id.*).

The threshold issue raised in the pending motion is whether the Hendrick design has a second flow modifier. If not, it does not infringe the '448 Patent.

## II. The Applicable Legal Standards

### A. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, — F.3d —, 2015 WL 1600689, at *2 (5th Cir. Apr. 8, 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at *2 (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id*. (quotations omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v.*

*$92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 2015 WL 1600689, at *2 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 2015 WL 1600689, at *2.

**B.     Infringement**

Patent-infringement claims involve two analytic steps. *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004); *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1302 (Fed. Cir. 2004). First, the court determines the meaning and scope of the asserted claims. *Scanner*, 365 F.3d at 1302; *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). Second, the claims as construed are compared to the allegedly infringing method or product to determine whether the claims encompass the accused method or product. *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could

5

have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). When the parties agree on the meaning of the relevant terms, a court need not formally construe the claims to decide a motion for summary judgment of noninfringement. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

"Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997)), *overruled on other grounds*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) (en banc). The patentee "may do so by relying on either direct or circumstantial evidence." *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1060 (Fed. Cir. 2009); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("[P]roof of inducing infringement or direct infringement [does not] require[] direct, as opposed to circumstantial evidence. . . . It is hornbook law that direct evidence of a fact is not necessary." (emphasis omitted)), *abrogated on other grounds*, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). Because dependent claims incorporate all the limitations of the independent claims from which they depend, if even one limitation of an independent claim is not met, there can be no infringement of the dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989).

Hendrick does not design or manufacture all the material components of the accused water-intake screen. Bilfinger's claim is contributory infringement. To show that Hendrick contributorily infringed the '448 Patent, Bilfinger must prove "1) that there is direct infringement, 2) that the

accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citing 35 U.S.C. § 271(c)). "[T]here can be no inducement or contributory infringement without an underlying act of direct infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)).

### III. Analysis

#### A. Timeliness

Bilfinger argues that Hendrick's summary judgment motion is untimely and should be denied because Bilfinger did not have full discovery on its infringement theory. But at a January 12, 2015 hearing on Hendrick's summary judgment motion, Bilfinger was unable to identify any information that it needed to obtain in discovery in order to respond to Hendrick's motion. That hearing was almost two months before the March 6, 2015 discovery deadline, but Bilfinger did not supplement or seek to supplement its summary judgment response or surreply with any new information it might have obtained before the deadline. Bilfinger has not shown a basis to delay ruling on or deny the motion based on timeliness. *See Cheyenne Arapaho Tribes of Oklahoma v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009) (the district court did not abuse its discretion in denying the nonmovant's Rule 56(d) (then Rule 56(f)) motion, which did not specify how the requested discovery would aid in the court's resolution of the summary judgment motion).

#### B. Literal Infringement

The '448 Patent contains 14 claims. Claim 1, the claim at issue, describes:

> A solid screen intake apparatus, comprising:
> a solid base having a top surface and being disposed in a water

>source;
>a body mounted on the top surface of the base, the body having first and second ends and defining a hollow therein, the body having an outlet in communication with the hollow;
>a first cylinder screen disposed on the first end of the body, sealingly mounted on the top surface of the base, and defining a first interior;
>at least one first flow modifier disposed between the first screen and the body and placing the first interior in fluid communication with the hollow;
>a second half cylinder screen disposed on the second end of the body, sealingly mounted on the top surface of the base, and defining a second interior; and
>*at least one second flow modifier* disposed between the second screen and the body and placing the second interior in fluid communication with the hollow.

U.S. Patent No. 8,297,448, col. 6, ll. 2–19 (emphasis added). The issue is whether Hendrick's design includes "at least one second flow modifier," as the claim language requires. The parties have agreed for the purpose of this motion that a "flow modifier" is "a component of the screen that makes water enter the screen surface uniformly." (Docket Entry No. 30, Ex. A, Whitaker Depo. at p. 47; Docket Entry No. 47 at pp. 7, 11).

The parties have submitted evidence on Hendrick's screen design, including its flow-modifier component. It is undisputed that: (1) Hendrick's flow-modifier component is one long piece of metal in the shape of a half-cylinder; (2) this piece of metal is made by welding two shorter pieces of metal together; and (3) the flow-modifier component is pierced with 48 holes that vary in diameter depending on their location along the component. (*Id.* at pp. 45–50).

There is only one flow-modifier component in each Hendrick pump. That component is located below the splice plate at the midpoint of the screen. The '448 Patent describes two or more flow modifiers placed between each half-cylinder screen and the body. Hendrick's design has one continuous half-cylindrical flow-modifier component placed horizontally below the screen or

screens.

Bilfinger makes three arguments to support its position that each of Hendrick's flow-modifier components, and therefore each Hendrick device, has "at least one second flow modifier." First, Bilfinger argues that the flow-modifier component is simply two flow modifiers joined by welding, and welding two parts together does not make them one part. Second, Bilfinger argues that a splice plate is attached to the center of the flow-modifier component, dividing it into two equal flow modifiers. Third, Bilfinger argues that each of the 48 holes in the Hendrick flow-modifier component is itself a flow modifier.

Each of these arguments, and Hendrick's response, is examined in turn.

### 1. The Argument That the Flow-Modifier Component Is More Than One Flow Modifier Because It Is Welded

Hendrick's flow-modifier component is made by welding two shorter pieces of metal together. John Whitaker, Hendrick's designated representative, testified that the flow-modifier component is made this way because Hendrick's equipment cannot process a piece of metal the length of the full flow-modifier component. (Whitaker Depo. at p. 90). Whitaker also testified that the fact that the flow-modifier component is welded does not affect how that component operates. (*Id.* at pp. 73–74).

Bilfinger argues that there are two separate flow modifiers because the single Hendrick flow-modifier component "is in fact two pieces of material, welded together in the center of the product where the splice plate is located." (Docket Entry No. 40 at p. 2). Both the evidence and the law make it clear that, although the Hendrick flow-modifier component is made from two pieces of metal welded together, it is a single component. "[T]he process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim." *Baldwin Graphic Sys.,*

*Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008); *see also Thomson Spot Welder Co. v. Ford Motor Co.*, 265 U.S. 445, 447 (1924) ("Welding is the art, practiced immemorially, of uniting two pieces of metal in one piece."). The fact that the component was welded from two pieces of metal does not raise a triable issue on Bilfinger's first infringement argument.

### 2. The Argument That the Splice Plate Makes at Least Two Flow Modifiers

The screen in Hendrick's design contains a splice plate at the midpoint. (Whitaker Depo. at pp. 64–65). The flow-modifier component's central weld line is directly below the splice plate connecting the two halves of the screen. (*Id.* at pp. 64–65, 90–91). Bilfinger's second argument is that the splice plate divides the entire Hendrick product into two mirror-image halves, each with its own components, including separate flow modifiers. (Docket Entry No. 40 at p. 3).

The undisputed summary judgment evidence shows that the splice plate is not connected to the flow-modifier component. (Docket Entry No. 27, Ex. L). Whitaker testified that two pieces of metal are welded to each other to make the flow modifier and that neither half is welded to a splice plate. (Whitaker Depo. at pp. 65, 74, 90, 92). Whitaker also testified that the entire Hendrick product is symmetrical along the splice-plate line and that half of the product falls on each side of that line. (*See id*. at pp. 93–94 ("Q: . . . that splice plate acts to divide this product into two mirror image halves; correct? . . . A: It basically divides it into halves."; "A: The splice plate is on the center line and the product is basically symmetrical about the splice plate.")). But the record evidence shows that although half of the flow-modifier component is on one side of the splice plate and the other half is on the other side. There is only one flow modifier. The presence of the splice plate does not make a single component into two or create a separate mirror-image flow modifier on each side of the plate.

Bilfinger also claims (and Hendrick disputes) that the Hendrick design has two separate screens, one on each side of the splice plate. Even if Bilfinger is correct, the fact that half of the flow-modifier component is under each screen does not mean that there are two flow modifiers. The presence of the splice plate and the location of the flow-modifier component in relationship to it does not raise a triable issue on Bilfinger's second argument.

### 3. The Argument That the 48 Holes in the Flow-Modifier Component Are Each a Separate Flow Modifier

The Hendrick flow-modifier component has 48 holes to distribute the water across the screen surface. The holes are smaller near the center of the flow-modifier component to prevent water from concentrating at the part of the screen that is above the central outlet. (Whitaker Depo. at pp. 46–50).

Bilfinger claims that because "each hole modifies flow," each of the 48 holes is itself a flow modifier. (Docket Entry No. 40, p. 4 (emphasis omitted)). The parties have agreed, for the purpose of Hendrick's summary judgment motion, that a flow modifier is "a component of the screen that makes water enter the screen surface uniformly." None of the individual holes can "make the water enter the screen service uniformly." Whitaker testified that the "combination of these holes," rather than the individual holes, is what makes the water flow uniform. (Whitaker Depo. at p. 50). The combination of the holes piercing the component does not create multiple components.

The '448 Patent's prosecution history also suggests that a "flow modifier" is not everything or anything that may modify water flow. In a 2013 proceeding, the Patent Office examiner stated that "flow modifier" needed to be limited to a specific claimed structure and could not refer to anything that modifies flow. The examiner explained that any "wall surfaces and other structures that a flowing fluid contacts will 'modify' its flow." (Docket Entry No. 31, Ex. G, p. 13). Bilfinger

has not raised a triable issue on its third and final argument that the Hendrick design has "at least one second flow modifier."

### 4. Summary

Bilfinger has not pointed to evidence in the summary judgment record supporting its argument that Hendrick's design has "at least one second flow modifier." Undisputed evidence in the record shows that Hendrick's screen design has only one component that "makes water enter the screen surface uniformly." The '448 Patent claims two separate flow modifiers, not two halves of a single component. When a claim provides for two separate elements, the two elements "logically cannot be one and the same." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996); *see also Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004) ("the clear implication of the claim language is that the pair of probe networks is a distinct component, separate from the electrical operating unit of the claimed invention."). Conversely, a single component cannot be at least two.

### C. Infringement Under the Doctrine of Equivalents

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002). Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. The doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Eagle*

12

*Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002). The test for equivalence is whether the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. *Warner-Jenkinson*, 520 U.S. at 40. Summary judgment that an accused device does not infringe under the doctrine of equivalents is appropriate if "no reasonable jury could determine two elements to be equivalent." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1360 (Fed. Cir. 2002) (quoting *Warner-Jenkinson*, 520 U.S. at 39 n. 8).

Although infringement under the doctrine of equivalents is a fact question, a court may determine as a matter of law that the "all limitations" rule, the prior art, or prosecution-history estoppel preclude the claim. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001); *see also Festo*, 535 U.S. at 736; *Glaxo Wellcome, Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1351 (Fed. Cir. 2004). Under the "all limitations rule," the doctrine of equivalents does not apply if it would vitiate an entire claim limitation. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). The doctrine of equivalents does not apply "if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson Sporting Goods Co. v. David Geoffrey and Assocs.*, 904 F.2d 677, 683 (Fed. Cir.1990) ("A patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims."). And prosecution-history estoppel may bar a patentee from asserting infringement under the doctrine of equivalents if the claim scope has been narrowed by amendment or argument during the patent prosecution. *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003).

Bilfinger has not pointed to record evidence indicating that the differences between the

single Hendrick flow modifier and the two or more flow modifiers described in the '448 Patent are insubstantial. Proving infringement under the doctrine of equivalents requires "particularized evidence and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or with respect to the 'function, way, result' test." *PC Connector Solutions LLC v. Smartisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) ("Having presented the district court with only conclusory statements regarding equivalence, without any particularized evidence and linking argument . . . PC Connector is now foreclosed form invoking the substantive application of the doctrine of equivalents." (citing *Texas Instruments*, 90 F.3d at 1567)).

Hendrick also argues that even if Bilfinger had met its burden of submitting or pointing to evidence in the summary judgment record showing that the differences between Bilfinger's claimed invention and Hendrick's accused design are insubstantial, Bilfinger is estopped from asserting infringement under the doctrine of equivalents because the '448 Patent claims were narrowed during prosecution. Hendrick contends that the amendments during prosecution foreclose Bilfinger's argument that a single flow modifier is equivalent to the two or more flow modifiers that the '448 Patent claims.

"Where an amendment narrows the scope of the claims, and that amendment is adopted for a substantial reason related to patentability, the amendment gives rise to a presumption of surrender for all equivalents that reside in 'the territory between the original claim and the amended claim.'" *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)). "This presumption can be overcome by showing that 'at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.'" *Intervet*, 617

14

F.3d at 1291 (quoting *Festo*, 535 U.S. at 741). "One way to make this showing is to demonstrate that 'the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question.'" *Id.* (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc)). "Although there is no hard-and-fast test for what is and what is not a tangential relation, it is clear that an amendment made to avoid prior art that contains the equivalent in question is not tangential." *Id.* (citing *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1357 (Fed. Cir. 2003)).

"The applicability of prosecution history estoppel does not completely bar the benefit of the doctrine of equivalents from all litigation related to the amended claim." *Id.* "The scope of the estoppel must fit the nature of the narrowing amendment. A district court must look to the specifics of the amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular doctrine of equivalents argument being made." *Id.* If one of ordinary skill in the art would consider the accused product to be surrendered subject matter, the doctrine of equivalents cannot be used to claim infringement by that product. *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324–25 (Fed. Cir. 2002).

The original application for the '448 Patent included claims that required only one flow modifier. (Docket Entry No. 31, Ex. C, Claims 4, 5, 6). The applicant later added claim 29, which described "at least one first flow modifier" and "at least one second flow modifier." (Docket Entry No. 31, Ex. D, p. 6). In June 2012, the Patent Office examiner cancelled claims 1 through 27. (Docket Entry No. 31, Ex. E). The applicant accepted this amendment and cancellation, which left no claims that required fewer than two flow modifiers. (*Id.*). In October 2012, the applicant filed claims that sought either to eliminate the requirement that the device have a flow modifier or to

reduce the number of required flow modifiers to one. (Docket Entry No. 31, Ex. F). The Patent Office rejected the amended claims, noting that the use of a single flow modifier (as well as the use of no flow modifiers) was disclosed in the prior art. (Docket Entry No. 31, Ex. G). The Patent Office also stated that the applicant had not claimed a structure that would define the term "flow modifier." (*Id.*).

To avoid prior art, the amendments during prosecution eliminated claims requiring fewer than two flow modifiers. Bilfinger cannot now claim that the use of a single flow modifier infringes the '448 Patent under the doctrine of equivalents. *See Intervet*, 617 F.3d at 1291.

## IV. Conclusion

The motion for partial summary judgment, (Docket Entry Nos. 24, 25), is granted. The *Markman* hearing scheduled for **June 2, 2015**, at 9:00 a.m. in Courtroom 11-B is converted to a status and scheduling conference.

SIGNED on May 26, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge